IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
|     Plaintiff, | :   Case No. 1:20-cr-11 |
| v. | :   Judge Susan J. Dlott |
| ALEXANDER MAULL, | :   **ORDER DENYING MOTION TO SUPPRESS** |
|     Defendant. | : |

This matter is before the Court on Defendant's Amended Motion to Suppress Evidence, which the Government opposes. (Docs. 16, 17.) For the reasons set forth below, Defendant's motion will be **DENIED.**

I.    **BACKGROUND**

    **A. Indictment**

On February 6, 2020, Defendant Alexander Maull was charged in a one-count Indictment for violating 18 U.S.C. §§ 922(g)(1), 924(a)(2), and 2 for being a previously convicted felon in possession of a firearm. (Doc. 3.) Defendant filed an Amended Motion to Suppress (Doc. 16) on May 11, 2020,[1] to which the Government responded in opposition (Doc. 17). On July 23, 2020, the Court held an evidentiary suppression hearing and took the matter under advisement.

    **B. Facts**[2]

Cincinnati Police Officer Maurice O'Brien testified on behalf of the Government at the hearing. Officer O'Brien was on patrol on September 14, 2019 when he received radio dispatch

---

[1] The Amended Motion supersedes the original, which is now moot. (Doc. 15.)
[2] These facts are based upon the hearing testimony of the Government's witness, Cincinnati Police Officer Maurice O'Brien, as well as Government Exhibits 1, 2, and 3. The Defendant also submitted Defense Exhibit 1, audio of the 911 call.

reporting shots fired on Liberty Street and Walnut Street, near the Shell gas station. The suspect was described as a 23-year-old black male wearing a red sweater and black hat riding a Red Bike.[3] Dispatch reported that the suspect was traveling on Liberty Street towards Vine Street.[4]

Driving his marked police cruiser, Officer O'Brien shortly thereafter observed the Defendant riding a Red Bike on Liberty Street in the location dispatch reported. He activated his lights in attempt to stop the Defendant.[5] Because the Defendant did not stop, police chased him along Vine Street and onto Mercer Street. Continuing to flee, Defendant abandoned his bicycle around the 1300 block of Vine Street. Officer O'Brien and other officers who responded to the scene discovered the Defendant hiding in a grassy lot twenty to thirty feet away from an abandoned Red Bike.

Officer O'Brien held Defendant at gunpoint while he approached him, and another officer handcuffed him.[6] Officers searched Defendant for a gun. Defendant was not given a *Miranda*[7] warning but talked with the police during his arrest and processing.

Police searching the area recovered an abandoned .25 firearm. After being transported to the Hamilton County Justice Center, Defendant was searched at intake and discovered to have .25 caliber bullets on his person.

## II. ANALYSIS

### A. Fourth Amendment

---

[3] The Cincinnati Red Bikes are red painted rental bicycles that are available at kiosks throughout the city through a bikeshare program.

[4] An Incident Detail Report for September 14, 2019 was entered into evidence as Government Exhibit 1. The Incident Detail Report contains a log of calls reported during his patrol that day. Officer O'Brien was not yet logged into his computer system to see the Incident Detail Report on September 14, 2019 when he responded to the audio report of the incident involving the Defendant. He testified that as a result, he was unaware the caller's name was "Tasha" or what her phone number was at the time he responded to the call.

[5] Officer O'Brien's dash camera video began recording when he activated his lights. The video was entered into evidence as Government Exhibit 2.

[6] Officer O'Brien was wearing a body camera, which was activated when he pulled his gun. The video from the incident with the Defendant was entered into evidence as Government Exhibit 3.

[7] *Miranda v. Arizona*, 384 U.S. 436 (1966).

The Defendant argues that his detention was premised solely on anonymous, uncorroborated, and untrustworthy information from a 911 call, and as such, no reasonable suspicion supported conducting an investigative stop. The Government contends that the initial stop of the Defendant was supported by reasonable suspicion of a crime based on an eyewitness report. However, he was not seized until he submitted to police authority, and at that point, officers had reasonable suspicion and probable cause to arrest him for obstructing official business by fleeing their investigation. For the reasons that follow, the Court finds that the stop of the Defendant was supported by reasonable suspicion.

1. **Point of Seizure**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons . . . against unreasonable searches and seizures." U.S. Const. amend. IV. This protection extends to all seizures, including investigatory *Terry*[8] stops, which occur if an officer has "reasonable, articulable suspicion that the person has been, is, or is about to be engaged in criminal activity." *United States v. Johnson*, 620 F.3d 685, 690 (6th Cir. 2010) (citing *United States v. Place*, 462 U.S. 696, 702 (1983)).

Fourth Amendment protections are not triggered until a person is "seized," or when an officer has in some way restrained the defendant's liberty by means of physical force or show of authority such that a reasonable person viewing all the circumstances surrounding the incident would not believe he is free to leave. *Id.* (citing *Terry*, 392 U.S. at 19 n.16; *Michigan v. Chesternut*, 486 U.S. 567, 573 (1988)). An individual must *actually yield* to the show of authority to be seized within the meaning of the Fourth Amendment. *Id.* (citing *Brendlin v.*

---

[8] *Terry v. Ohio*, 392 U.S. 1 (1968).

3

*California,* 551 U.S. 249, 254 (2007)). It is well-established that a reasonable person does not yield until they comply with officers' orders to stop. *Id.* at 691.[9]

The Court's initial inquiry is when the Defendant was seized for purposes of invoking his Fourth Amendment rights. According to Officer O'Brien, the Defendant fled when confronted by a marked police cruiser with activated lights. Although a reasonable person would not feel free to leave when being pursued by a marked police cruiser with activated lights, seizure did not occur until Defendant yielded to officers' authority, which is when officers found him hiding in a grassy lot after his flight and abandonment of the Red Bike. *See id.*

### 2. Reasonable Suspicion

At the time Defendant was seized, Officer O'Brien had reasonable suspicion to stop him to investigate the crime of unlawful discharge of a weapon. "The Fourth Amendment permits brief investigative stops . . . when a law enforcement officer has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Navarette v. California,* 572 U.S. 393, 396–97 (2014) (citing *United States v. Cortez,* 449 U.S. 411, 417–18 (1981)). "The 'reasonable suspicion' necessary to justify such a stop 'is dependent upon both the content of the information possessed by police and its degree of reliability.'" *Id.* (citing *Alabama v. White,* 496 U.S. 325, 330 (1990)). "The standard takes into account the totality of the circumstances—the whole picture." *Id.* (citing *Cortez,* 449 U.S. at 417.) Although a "hunch" is insufficient, the level of suspicion required to establish reasonable suspicion is less than that required for probable cause. *Id.* (citing *United States v. Sokolow,* 490 U.S. 1, 7 (1989)).

---

[9] In *Johnson,* the Sixth Circuit found that a reasonable person would not feel free to leave where two officers arrived in marked police cars, announced themselves as police several times and yelled at the defendant to "stop" and "stay right there where he was" as they advanced towards him. *Id.* at 691. Only when the defendant complied with the officers' orders was he "seized" for Fourth Amendment purposes. *Id.*

4

Reasonable suspicion for an investigative stop need not be based upon the officer's personal observation and can be based on information supplied by another. *Id.* at 397. However, "an anonymous tip alone seldom demonstrates the informant's basis of knowledge or veracity." *Id.* (citing *White*, 496 U.S. at 329 (emphasis removed)). This is so because generally, ordinary citizens do not provide extensive recitations of the basis of their everyday observations and an anonymous tipster's veracity is unknown. *Id.*

Reasonable suspicion requires that a tip be more than bare bones – it must be reliable in its assertion of criminal activity and not just the tendency to identify a particular individual. *Florida v. J.L.*, 529 U.S. 266, 272 (2000). In *J.L.*, reasonable suspicion was lacking where an anonymous tipster reported to police that a young black male standing at a particular bus stop and wearing a plaid shirt was carrying a gun, but no information was known about the informant, and the call provided no predictive information to test the informant's credibility or knowledge. *Id.* at 271. In contrast, an anonymous tip was sufficiently reliable to establish reasonable suspicion for an investigative stop where it was based on first-hand knowledge of the caller, contemporaneous reporting, and the use of the 911 emergency system to report the tip in *Navarette.* 572 U.S. at 399–400.

A tip with corroborated, predictive information also can be sufficiently reliable, as in *Alabama v. White.* 496 U.S. at 327. There, the Supreme Court found sufficient indicia of reliability of an anonymous tip to provide reasonable suspicion to make an investigatory stop where the tipster stated that an individual would be leaving an apartment at a particular time in a particular vehicle and going to a particular place while in possession of an illegal substance. *Id.* Police were able to corroborate the departure location, time, vehicle and direction of travel, and

5

the tip contained details as to future actions which would ordinarily not easily be predicted. *Id.* at 332.

In this case, Tasha's tip has features of *Navarette* and *Alabama* and lacks the problems of *J.L.* Police were able to confirm the description and method of travel of the Defendant, a black male in a red sweater with a black hat riding a Red Bike. Police were also able to corroborate his future actions—the location and direction of his travel— such that Officer O'Brien testified that he was surprised to see the Defendant in the exact location reported, on Liberty Street heading towards Vine Street. Tasha's credibility was verified to some degree by the fact that she claimed calling close in time to witnessing Defendant firing a gun, and Officer O'Brien located Defendant in quick succession to the call. Finally, Tasha used the 911 emergency system which has some features for tracing and provides safeguards against false reports.

Defendant's nervous and evasive behavior also supports finding reasonable suspicion. Defendant fled when police tried to stop him, and he was located hiding in a grassy area near his abandoned Red Bike. The Court has held that a tip based on a 911 call as well as a defendant's nervous and evasive behavior when confronted by police provided reasonable suspicion to stop a defendant. *Robinson v. Howes*, 663 F.3d 819, 830–31 (6th Cir. 2011). The facts are similar here.

Finally, the Court agrees with the Government that by the time the Defendant was seized, the investigation unfolded such that officers also had at least reasonable suspicion to stop Defendant for obstructing justice based upon his fleeing from a marked police cruiser with activated lights.[10]

---

[10] The Government also argues there was probable cause for his arrest, but the motion can be decided without addressing that issue. The Court notes that the elements of obstruction of justice under Ohio law are: (1) an act by the Defendant; (2) done with the purpose to prevent, obstruct, or delay a public official; (3) that actually hampers or impedes a public official; (4) while the official is acting in the performance of a lawful duty; and (5) the defendant acts so without privilege. *Smith v. City of Wyoming*, 821 F.3d 697, 715 (6th Cir. 2016) (citing *Halasah v. City of Kirtland*, 574 Fed. App'x 624, 630 (6th Cir. 2014)).

6

Based on the totality of the circumstances, the Court finds that the officers reasonably suspected Defendant of firing gun shots and fleeing from police, and the stop that resulted was not in violation of the Fourth Amendment.

## B. Fifth Amendment

Defendant argues he was asked incriminating questions by officers after his arrest, and those statements must be suppressed. The Government asserts that no statement that the Defendant made, or that the Government seeks to use at trial, was given in response to police interrogation.

The Fifth Amendment protects against self-incrimination. Before police may interrogate a suspect in custody, they must first read *Miranda* warnings. *United States v. Pacheco-Lopez*, 531 F.3d 420, 423 (2008) (citing *Miranda v. Arizona*, 384 U.S. 436 (1966)). "An 'interrogation' comprises 'not only [ ] express questioning, but also any words or actions on the part of the police that the police know are reasonably likely to elicit an incriminating response from the suspect." *Id.* (citing *Rhode Island v. Innis,* 446 U.S. 291, 301 (1980)). "[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda*, 384 U.S. at 444. "When police ask questions of a suspect in custody without administering the required warnings, *Miranda* dictates that the answers received be presumed compelled and that they be excluded from evidence at trial in the [government's] case in chief." *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1515–16 (6th Cir. 1988) (quoting *Oregon v. Elstad*, 470 U.S. 298, 317 (1985)). "However, where a defendant makes a voluntary statement without being questioned or pressured by an interrogator, the statements are admissible despite the absence of Miranda warnings." *United States v. Wynn*,

7

499 Fed. App'x 484, 486 (6th Cir. 2012) (citing *United States v. Murphy*, 107 F.3d 1199, 1204 (6th Cir. 1997)).

Pursuant to the public safety exception to *Miranda*, officers may ask "questions necessary to secure their own safety or the safety of the public" as opposed to "questions designed solely to elicit testimonial evidence from a suspect" without administering *Miranda* warnings. *United States v. Williams*, 272 Fed. App'x 473, 477 (6th Cir. 2008) (citing *New York v. Quarles,* 467 U.S. 649, 659 (1984)). The exception applies "when officers have a reasonable belief based upon articulable facts that they are in danger." *Id.* (quoting *United States v. Williams,* 483 F.3d 425, 428 (6th Cir. 2007)). To establish such a reasonable belief, the officer must have reason to believe the defendant might have or recently have had a weapon and that someone other than police might gain access to the weapon and inflict harm with it. *Id.*

There is no dispute Defendant was not *Mirandized*. However, Defendant has not moved to suppress any specific statements. The evidence establishes an officer asked the Defendant, "You got a weapon on you, that why you run?"[11] (Government Exhibit 2, video 1, 1:15.) But that inquiry falls under the public safety exception to *Miranda*. Given that the Defendant was pursued as matching a description of an individual who fired shots with a gun, it was reasonable for officers to believe he was armed. Alternatively, it also was reasonable for officers to believe that if Defendant abandoned a gun, someone other than the police may access the weapon and inflict harm.

Beyond that, during his interaction with police, Defendant volunteered rambling information, some of which is difficult to understand. Defendant has not argued how any specific statements constitute interrogation. Defendant discussed running from people with

---

[11] Defendant responded, "No, I was runnin' from people who had weapons." (*Id.* at 1:16–1:19.)

8

weapons, having identification for his "weed," that he came to buy pills, and wished he didn't have felonies so he could legally carry a weapon. He also said, "they tried to rob me and say I'm in the wrong" and mentioned child support. The Court finds these volunteered statements were not made pursuant to interrogation.[12]

For these reasons, the Court **DENIES** Defendant's request to suppress statements based upon a Fifth Amendment violation.

### III. Conclusion

Because the stop of Defendant was supported by reasonable suspicion, the Court finds no Fourth Amendment violation. Although the Defendant was not *Mirandized*, the statements made after Defendant's arrest either fall under the public safety exception or were volunteered. Defendant's Motion to Suppress (Doc. 16) is **DENIED**.

**IT IS SO ORDERED.**

_____
Judge Susan J. Dlott
United States District Court

---

[12] Although not a statement specifically identified by the Defendant for suppression, the Court notes that as Defendant was being searched, an officer asked while pulling out a baggie if the baggie was "heroin" to which Defendant responded that it was "weed." (Government Exhibit 3, video 1, 3:50–3:59.) Defendant is not being charged with an offense related to his possession of marijuana, and, in any event, he initially volunteered the information that he possessed marijuana. If the Government intends to use this statement at trial, Defendant may renew its *Miranda* argument and seek to have it suppressed.